420 F.3d 1197
 SAN JUAN COUNTY, UTAH, a Utah political subdivision, Plaintiff-Appellee,
v.
UNITED STATES of America; Department of Interior; National Park Service, Defendants-Appellees,
Alaska Wilderness League, California Wilderness Coalition, Colorado Environmental Coalition, Colorado Mountain Club, Greater Yellowstone Coalition, National Parks Conservation Association, National Wildlife Refuge Association, New Mexico Wilderness
Alliance, San Juan Citizens Alliance, Sierra Club, Southeast Alaska Conservation Council, Wyoming Outdoor Council, State of Utah, Amici Curiae,
Southern Utah Wilderness Alliance, a Utah non-profit corporation; Grand Canyon Trust; The Wilderness Society, Movants-Appellants.
 No. 04-4260.
 United States Court of Appeals, Tenth Circuit.
 August 30, 2005.
 
 COPYRIGHT MATERIAL OMITTED Heidi J. McIntosh, Southern Utah Wilderness Alliance (Stephen H.M. Bloch, Southern Utah Wilderness Alliance, Salt Lake City, UT; Edward B. Zukoski, Earthjustice, Denver, CO, with her on the briefs), Salt Lake City, UT, for Movants-Appellants.
 Aaron P. Avila, (Thomas L. Sansonetti, Assistant Attorney General, Paul M. Warner, United States Attorney, Carlie Christiansen, Assistant United States Attorney, Bruce D. Bernard and John L. Smeltzer, Washington, DC, and G. Kevin Jones, Office of the Solicitor, Salt Lake City, UT, with him on the briefs), Washington, DC, for Defendants-Appellees United States of America, Department of Interior, and National Park Service.
 Shawn T. Welch and A. John Davis, Pruitt Gushee, P.C., Salt Lake City, UT, on the brief for Plaintiff-Appellee San Juan County.
 Rebecca L. Bernard, Trustees for Alaska, Anchorage, AK, on the brief for Amici Curiae Alaska Wilderness League, California Wilderness Coalition, Colorado Environmental Coalition, Colorado Mountain Club, Greater Yellowstone Coalition, National Parks Conservation Association, National Wildlife Refuge Association, New Mexico Wilderness Alliance, San Juan Citizens Alliance, Sierra Club, Southeast Alaska Conservation Council, and Wyoming Outdoor Council.
 Mark L. Shurtleff, Utah Attorney General, Edward O. Ogilvie, Assistant Utah Attorney General and Jaysen R. Oldroyd, Assistant Utah Attorney General, on the brief for Amicus Curiae State of Utah.
 Before SEYMOUR, PORFILIO, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 In this federal quiet title action brought pursuant to 28 U.S.C. § 2409a, San Juan County, Utah ("San Juan") seeks both to quiet title in a right-of-way along a portion of Salt Creek running through the Canyonlands National Park, and a declaratory judgment that the National Park Service ("NPS") cannot use a gate to restrict San Juan's right-of-way. Three conservation groups, the Southern Utah Wilderness Alliance, the Wilderness Society and the Grand Canyon Trust (collectively "SUWA"), sought to intervene, both permissively and as a matter of right. See Fed.R.Civ.P. 24. The district court denied intervention. SUWA appeals.[1] In reversing the district court's decision, we hold that 1) prospective intervenors do not have to establish their own standing, in addition to meeting Rule 24's requirements, before they can intervene; and 2) SUWA is entitled to intervene as a matter of right.
 
 I. BACKGROUND
 
 2
 A. San Juan's quiet title action.
 
 
 3
 San Juan claims its right-of-way under "Section 8 of the Mining Act of 1866, . . . later codified as Revised Statute 2477." Revised Statute 2477, later codified at 43 U.S.C. § 932, "was enacted by Congress in 1866 to assist in the development of the West by granting rights of way for construction of highways over public lands to miners, farmers, ranchers, and homesteaders." Southwest Four Wheel Drive Ass'n v. Bur. of Land Mgmt., 271 F.Supp.2d 1308, 1313 n. 8 (D.N.M.2003) (quotation omitted), aff'd, 363 F.3d 1069 (10th Cir.2004). This statute "granted a right of way for the construction of highways over public lands . . . not reserved for public uses." Sierra Club v. Hodel, 848 F.2d 1068, 1078 (10th Cir.1988) (quotation omitted), overruled in part on other grounds by Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970, 973 (10th Cir.1992) (en banc). "[A] right-of-way could be obtained without application to, or approval by, the federal government. Rather, the grant referred to in R.S. 2477 became effective upon the construction or establishing of highways, in accordance with the State laws." Id. (citations, quotations and alterations omitted). Although Congress repealed R.S. 2477 in 1976, it "explicitly protect[ed] R.S. 2477 rights-of-way in existence" at that time. Id. In this quiet title action, San Juan asserts that "[t]he Salt Creek road" running along Salt Creek "was used and constructed as a public thoroughfare for decades prior to the [federal government's] reserv [ing] the underlying lands for Canyonlands" National Park in 1962.
 
 
 4
 B. Other related litigation.
 
 
 5
 SUWA's motion to intervene in San Juan's quiet title action cannot be understood without discussing the broader ongoing litigation between these parties concerning whether, and to what extent, motorized traffic should be allowed on the R.S. 2477 right-of-way San Juan is now claiming. In the 1990s, the NPS prepared a "Backcountry Management Plan" for Canyonlands National Park.[2] See S. Utah Wilderness Alliance v. Dabney, 7 F.Supp.2d 1205, 1207-09 (D.Utah 1998), rev'd, 222 F.3d 819 (10th Cir.2000). During that process, SUWA submitted comments to the NPS advocating closing Salt Creek Road to all motorized traffic. Instead, the NPS's final plan called for a permit system that would limit, but not eliminate, daily vehicle traffic on Salt Creek Road. See Dabney, 7 F.Supp.2d at 1208-09; Canyonlands National Park-Salt Creek Canyon 69 Fed.Reg. at 32,871 (June 14, 2004) (to be codified at 36 C.F.R. pt.1). SUWA sued the NPS in 1995, challenging this decision. See Dabney, 7 F.Supp.2d at 1206, 1209. In that case, the federal district court held that the NPS had violated the National Park Service Organic Act by permitting motorized vehicles in Salt Creek Canyon above Peekaboo Spring. See id. at 1210-12. This court reversed that determination, however, holding that the district court had employed an improper standard in reaching its decision. See S. Utah Wilderness Alliance v. Dabney, 222 F.3d 819, 822, 824-30 (10th Cir.2000). This court remanded the case to the district court, see id. at 830, where it remains pending.
 
 
 6
 As a result of the district court's 1998 decision, later overturned in 2000, there was no motorized traffic in the canyon for several years. "Trees and other vegetation . . . returned to the vehicle tracks, and sections of the stream channel . . . moved, since motorized vehicles were prohibited." In light of these changes, the NPS decided in 2001 to prepare an environmental assessment to re-evaluate allowing motorized vehicles in Salt Creek Canyon. See 69 Fed.Reg. at 32,872. SUWA again submitted comments against allowing any motorized traffic along the road. The NPS this time agreed with SUWA and closed Salt Creek Canyon above Peekaboo campsite to all motorized traffic, erecting a gate to accomplish the closure. See 69 Fed.Reg. at 32,871.
 
 
 7
 Meanwhile, following this court's remand of SUWA's action challenging the NPS's original decision refusing to close Salt Creek Canyon to all vehicle traffic, the federal district court, in 2001, permitted SUWA to amend its complaint to add San Juan and the State of Utah as defendants. Although "[n]either the State nor the County . . . asserted a cross-claim against the NPS, and they did not assert a counterclaim against SUWA," San Juan and the State filed a motion for partial summary judgment in that action against SUWA "seeking a finding that the Salt Creek Road from Peekaboo Spring to Angel Arch and Upper Jump is a valid and perfected R.S. 2477 right-of-way and also that the gate at Peekaboo Spring interferes with the public's right of access over the Salt Creek Road." In response to that summary judgment motion, the NPS and SUWA argued to the district court that San Juan and the State had never adequately pled a claim under the federal Quiet Title Act and that San Juan and the State could not join the United States, an indispensable party to such a quiet title claim. The district court agreed, holding it did not have jurisdiction to grant San Juan and the State the partial summary judgment those parties sought and, therefore, dismissed those two parties from the lawsuit.
 
 
 8
 C. This appeal.
 
 
 9
 San Juan then filed the separate quiet title action underlying this appeal, naming as defendants the United States, the Department of Interior and the National Park Service (collectively "federal defendants"). SUWA sought to intervene, both permissively and as a matter of right, on the federal defendants' behalf. See Fed.R.Civ.P. 24. Both San Juan and the federal defendants opposed SUWA's intervention. The district court denied SUWA's request to intervene. SUWA appeals. See Coalition of Az./N.M. Counties for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 839, 840, 846 (10th Cir.1996) (noting that a decision denying intervention is immediately appealable, where appellant sought review of denial of both permissive intervention and intervention as a matter of right).
 
 II. ANALYSIS
 A. Standing
 
 10
 As a threshold question, San Juan argues that before SUWA can intervene under Fed.R.Civ.P. 24, SUWA must first establish that it has standing to do so. Because standing implicates the district court's subject matter jurisdiction, we must address this issue before addressing the merits of SUWA's appeal. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). This court "review[s] questions of standing de novo." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir.2005). San Juan's standing argument raises a question of first impression in this circuit, and an issue on which the other circuits are divided. We conclude that prospective intervenors need not establish their own standing to sue or defend, in addition to meeting Rule 24's requirements, before intervening.
 
 
 11
 1. Intervention as a matter of right under Fed.R.Civ.P. 24(a)(2).
 
 
 12
 Both standing and intervention require that a party have an interest in the subject matter of the litigation. Addressing first standing, "Article III of the Constitution limits the power of federal courts to deciding `cases' and `controversies.'" Diamond v. Charles, 476 U.S. 54, 61, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). "Standing to sue or defend is an aspect of the case-or-controversy requirement." Arizonans for Official English v. Arizona, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).
 
 
 13
 To qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent. An interest shared generally with the public at large in the proper application of the Constitution and laws will not do.
 
 
 14
 Id. (citations, quotations omitted).
 
 
 15
 Rule 24(a)(2), on the other hand, provides that
 
 
 16
 [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 17
 Fed.R.Civ.P. 24(a)(2).
 
 In Diamond, the Supreme Court noted that
 
 18
 the precise relationship between the interest required to satisfy . . . Rule [24] and the interest required to confer standing has led to anomalous decisions in the Courts of Appeals. We need not decide today whether a party seeking to intervene before a District Court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III.
 
 
 19
 476 U.S. at 68-69, 106 S.Ct. 1697 (footnote omitted). The Supreme Court, thus, left this question unresolved. See McConnell v. Fed. Election Comm'n, 540 U.S. 93, 233, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (recognizing that this issue remains unresolved); Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, 519 U.S. 248, 264, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997) (same).
 
 
 20
 As the Supreme Court noted, circuit courts addressing this issue have reached different results. See Diamond, 476 U.S. at 68 n. 21, 106 S.Ct. 1697; see also Mangual v. Rotger-Sabat, 317 F.3d 45, 61 & n. 5 (1st Cir.2003); Mausolf v. Babbitt, 85 F.3d 1295, 1299 (8th Cir.1996). See generally 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1908, at 23 (2d ed. 2004 Supp.). The Seventh, Eighth and D.C. Circuits have held that an intervenor must establish its own standing, in addition to meeting Rule 24(a)(2)'s interest requirement, before intervening. See Jones v. Prince George's County, 348 F.3d 1014, 1017 (D.C.Cir.2003) ("[P]rospective intervenors in this circuit must possess standing under Article III of the Constitution."); South Dakota v. Ubbelohde, 330 F.3d 1014, 1023 (8th Cir.2003) ("A party seeking to intervene must establish both that it has standing to complain and that the elements of Rule 24(a)(2) are met."), cert. denied, 541 U.S. 987, 124 S.Ct. 2015, 158 L.Ed.2d 490 (2004); Solid Waste Agency v. United States Army Corps of Eng'rs, 101 F.3d 503, 507 (7th Cir.1996) (noting that the Seventh Circuit requires any prospective intervenor to show it has Article III standing). According to the D.C. Circuit, this is "because a Rule 24 intervenor seeks to participate on an equal footing with original parties to the suit." Fund for Animals, Inc. v. Norton, 322 F.3d 728, 732 (D.C.Cir.2003) (quotation omitted).
 
 
 21
 On the other hand, the Second, Fifth, Sixth, Ninth and Eleventh Circuits have all held that an intervenor need only meet Rule 24(a)(2)'s requirements that the intervenor have an interest in the litigation. See United States v. Tennessee, 260 F.3d 587, 595 (6th Cir.2001) ("[A]n intervenor need not have the same standing necessary to initiate a lawsuit.") (quotation omitted); Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1277-78 (11th Cir.2000) ("[W]e have held that a party seeking to intervene into an already existing justiciable controversy need not satisfy the requirements of standing as long as the parties have established standing before the court."); Ruiz v. Estelle, 161 F.3d 814, 829-30 (5th Cir.1998) ("[W]e hold that Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."); Yniguez v. Arizona, 939 F.2d 727, 731 (9th Cir.1991) (noting that a party does not need standing to intervene in existing litigation so long as another party on its side in the litigation remains in the case with Article III standing); United States Postal Serv. v. Brennan, 579 F.2d 188, 190 (2d Cir.1978) (noting that because there was already a case or controversy between the existing parties to litigation, "there was no need to impose the standing requirement upon the proposed intervenor"). For these circuits, Article III's standing requirement is met so long as the original parties to the litigation have standing. See, e.g., Loyd v. Ala. Dep't of Corr., 176 F.3d 1336, 1339 (11th Cir.1999) ("[T]his circuit has held that a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit.") (quotation omitted); see also Ruiz, 161 F.3d at 832; David L. Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv. L.Rev. 721, 726 (1968).
 
 
 22
 We conclude that the latter approach is the better reasoned and therefore hold that intervenors do not need to establish their own Article III standing in order to intervene as a matter of right under Fed.R.Civ.P. 24(a)(2).[3] In reaching this conclusion, we note that, because standing implicates a court's jurisdiction, it requires a court itself to raise and address standing before reaching the merits of the case before it. See Friends of the Earth, Inc., 528 U.S. at 180, 120 S.Ct. 693. Nevertheless, on many occasions the Supreme Court has noted that an intervenor may not have standing, but has not specifically resolved that issue, so long as another party to the litigation had sufficient standing to assert the claim at issue. For example, in Diamond, the Court addressed whether an intervenor, who was the only party to the litigation pursuing an appeal, had Article III standing to pursue an appeal on his own. See 476 U.S. at 58, 61, 106 S.Ct. 1697. The Court determined the intervenor, Diamond, did not have standing to pursue the appeal on his own. See id. at 64-71, 106 S.Ct. 1697. But the Court noted that had the original defendant "sought review," Supreme Court rules made it
 
 
 23
 clear that Diamond, as an intervening defendant below, also would be entitled to seek review, enabling him to file a brief on the merits, and to seek leave to argue orally. But this ability to ride "piggyback" on the [original defendant's] undoubted standing exists only if the [original defendant] is in fact an appellant before the Court; in the absence of the [original defendant] in that capacity, there is no case for Diamond to join.
 
 
 24
 Id. at 64, 106 S.Ct. 1697; see, e.g., McConnell, 540 U.S. at 233, 124 S.Ct. 619 (noting that because it is clear that defendant Federal Election Commission had standing, "we need not address the standing of the intervenor-defendants, whose position here is identical to the FEC's"); Arizonans for Official English, 520 U.S. at 66, 117 S.Ct. 1055 (noting that although the Court had "grave doubts whether [intervenors-appellants] have standing under Article III to pursue appellate review . . . we need not definitively resolve the issue. Rather, we will follow a path we have taken before and inquire, as a primary matter, whether originating plaintiff. . . still has a case to pursue."); see also Watt v. Energy Action Educ. Found., 454 U.S. 151, 160, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981) (noting that because one plaintiff had standing, the Court would not consider whether other plaintiffs had standing, relying on earlier Supreme Court cases).
 
 
 25
 2. Permissive intervention under Fed.R.Civ.P. 24(b).
 
 
 26
 SUWA also seeks to intervene permissively under Fed.R.Civ.P. 24(b). "The requirement of standing for permissive intervenors has received less attention but is no less unsettled." Mangual, 317 F.3d at 61; see also Transamerica Ins. Co. v. South, 125 F.3d 392, 396 n. 4 (7th Cir.1997); In re: Vitamins Antitrust Class Actions, 215 F.3d 26, 31-32 (D.C.Cir.2000); Amy M. Gardner, Comment, An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors, 69 U. Chi. L.Rev. 681, 683, 690-91, 693-97 (2002). For the same reasons relied upon above, we also conclude that a party seeking to intervene permissively need not first establish its standing. See Shaw v. Hunt, 154 F.3d 161, 165 (4th Cir.1998) (citing Sec. Exch. Comm'n v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940));[4] Employee Staffing Servs., Inc. v. Aubry, 20 F.3d 1038, 1042 (9th Cir.1994) (holding that a permissive intervenor need not establish standing).
 
 
 27
 3. Conclusion.
 
 
 28
 For these reasons, we hold that a party seeking to intervene under Fed.R.Civ.P. 24, either as a matter of right or permissively, need not establish its own standing, in addition to meeting Rule 24's requirements, before the party can intervene so long as another party with constitutional standing on the same side as the intervenor remains in the case.
 
 
 29
 B. Intervention as a matter of right under Fed.R.Civ.P. 24(a)(2).
 
 
 30
 We turn now to the district court's decision denying SUWA intervention as a matter of right under Fed.R.Civ.P. 24(a)(2) and evaluate that decision under the intervention criteria of Rule 24(a)(2). This court reviews that decision de novo. See Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1249-50 (10th Cir.2001).[5] Rule 24(a)(2) provides that [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 31
 Under that rule, therefore,
 
 
 32
 an applicant may intervene as of right if: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties.
 
 
 33
 Utah Ass'n of Counties, 255 F.3d at 1249 (quotations and alterations omitted). "This circuit follows a somewhat liberal line in allowing intervention." Id. (quotation omitted). In this case, no one disputes that SUWA's application to intervene was timely. We, therefore, address only the remaining three parts of the inquiry.
 
 
 34
 1. Does SUWA have an interest relating to the property at issue in San Juan County's quiet title action?
 
 
 35
 "Under Rule 24(a)(2), the intervenors must `claim[ ] an interest relating to the property or transaction which is the subject of the action.'" Utah Ass'n of Counties, 255 F.3d at 1251 (quoting Rule 24(a)(2)). "[I]n this circuit the interest must be direct, substantial, and legally protectable." Id. (quotation omitted); see also Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) (stating that such an interest must be "significantly protectable"). "The sufficiency of an applicant's interest is a highly fact-specific determination." Utahns for Better Transp. v. United States Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir.2002). The "interest test [i]s primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Id. (quotation omitted).
 
 
 36
 In Utah Association of Counties, this court found "persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals." 255 F.3d at 1252. In this case, the prospective intervening organizations' stated purposes include "protecting the nation's public lands, assuring their continued integrity in perpetuity, and preventing the destructive effect of motorized vehicle use to fragile resources." Furthermore, SUWA's
 
 
 37
 members and staff enjoy hiking, camping, birdwatching, study, contemplation, solitude, photography, and other activities on NPS lands, and particularly on lands in Canyonlands National Park and Salt Creek Canyon. These health, recreational, scientific, spiritual, educational, aesthetic, informational, and other interests will be directly affected and harmed by a decision granting San Juan County's R.S. 2477 claim, thereby overturning the NPS's closure order for Salt Creek Canyon beyond Peekaboo Spring and returning motorized vehicles to Salt Creek Canyon.
 
 
 38
 And SUWA members and staff have "participate[d] extensively in the NPS's land use planning and rulemaking process and have written numerous comment letters to the NPS, as well as to Canyonlands National Park addressing the devastating effect of vehicle use on the public resources of Salt Creek Canyon." Moreover, SUWA has litigated to protect its interest in Salt Creek road. See Coalition of Az./N.M. Counties for Stable Growth, 100 F.3d at 841 (considering an intervenor's "persistent record of advocacy," together with other factors).
 
 
 39
 SUWA, therefore, has established that it has a direct, substantial, and legally protectable interest in the portion of the Salt Creek road at issue in this litigation. See id. at 841-42; see also Mausolf, 85 F.3d at 1296, 1302 (8th Cir.1996) (holding that an intervenor that had "consistently demonstrated its interest in the Park's well-being (as it sees it) and has worked hard over the years, in various proceedings, to protect that interest" had interest sufficient to intervene in action to enjoin enforcing restrictions on snowmobiling in national park).
 
 
 40
 Relying on Coalition of Arizona/New Mexico Counties for Stable Economic Growth, 100 F.3d at 843, the federal defendants argue that, in a quiet title case such as this one, the party seeking to intervene must allege that it has a property interest in the land at issue. In Coalition of Arizona/New Mexico Counties for Stable Economic Growth, this circuit held that an advocate for the Mexican Spotted Owl, who was a "wildlife photographer, . . . amateur biologist, and . . . naturalist who ha[d] photographed and studied the Owl in its natural environment" was entitled to intervene in litigation challenging the United States Fish and Wildlife Service's decision to protect the Owl under the Endangered Species Act. 100 F.3d at 838-39, 841, 845, 846. In doing so, however, this court distinguished that case, "an administrative action," from two "traditional intervention cases," City of Stilwell v. Ozarks Rural Electric Cooperative Corporation, 79 F.3d 1038, 1042 (10th Cir.1996), and Allard v. Frizzell, 536 F.2d 1332 (10th Cir.1976) (per curiam). Coalition of Az./N.M. Counties for Stable Economic Growth, 100 F.3d at 842-43. This court noted that "the analysis of [Rule 24(a)(2)'s] interest requirement here [in the administrative action] is not analogous to the analysis of the interest requirements in those [traditional] cases." Id. at 843.[6]
 
 
 41
 The interests in those "traditional" intervention cases, however, were much more attenuated than SUWA's interest in the land at issue in this case. In Ozarks Rural Electric Cooperative Corporation, for instance, the City of Stilwell ("the City") owned and operated its own electric power system. See 79 F.3d at 1040-41. The City annexed land which had been served by another power company, Ozarks Rural Electric Cooperative ("Ozarks"). See id. at 1041. The City instituted a condemnation action, seeking to have Ozarks transfer its facilities and service rights for the annexed area to the City. See id. KAMO Electric Cooperative ("KAMO"), which sold power to Ozarks, sought to intervene in the condemnation suit because KAMO would lose sales to Ozarks if the City took Ozarks' facilities and service rights for this annexed area. See id. at 1042. KAMO specifically alleged that, although it had "no legal title to Ozarks' distribution system," KAMO had "a property right and financial interest in the service agreements and revenue stream between Ozarks and its member consumers." Id. (quotation omitted). This court rejected that argument, holding "KAMO merely has a contingent interest in the subject of the lawsuit — KAMO, as Ozarks' supplier of electric power, will benefit financially if Ozarks is allowed to continue to service its customers in Stilwell." Id. This court stressed that KAMO did not assert an interest in the property that was the subject of the condemnation action — the distribution facilities — and the indirect economic interest claimed in Ozark's business was simply "too attenuated and does not satisfy the direct and substantial requirement of Rule 24(a)(2)." Id. (quotation omitted).
 
 
 42
 In Allard, plaintiffs' cause of action concerned their possession of eagle feathers. See 536 F.2d at 1333-34. The court held that the National Audubon Society was not entitled to intervene as a matter of right based upon that organization's interest in protecting "living birds . . . and the environment." Id. at 1333. Again, the court observed that "[n]o interest is asserted by the movants as to these artifacts" (the actual eagle feathers which were the subject of the initial litigation). Id. at 1333. "It takes a strained reading to conclude that protecting living eagles has a question of fact or law in common with the constitutional questions raised in this case which have to do with dealing in feathers which came from long-dead eagles." Id. at 1334 (quotation omitted) (specifically addressing permissive intervention).
 
 
 43
 In neither Ozarks nor Allard did the intervenor assert any interest directly in the property that was the subject matter of the initial litigation. By contrast, SUWA does assert a direct interest in the Salt Creek Canyon property. Although SUWA does not assert an ownership interest in that property, it does assert a direct user interest in that property, which has always been held to be sufficient to support intervention. See Utahns for Better Transp., 295 F.3d at 1115-16; Utah Ass'n of Counties, 255 F.3d at 1248, 1251-53; Coalition of Az./N.M. Counties for Stable Growth, 100 F.3d at 842.
 
 
 44
 This court has specifically held that "[t]he interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is related to the property that is the subject of the action." Utah Ass'n of Counties, 255 F.3d at 1252 (rejecting the argument that an intervention should be denied because intervenor raised environmental issues whereas the initial suit challenged the legality of the President's action in creating a national monument). SUWA has met that burden in this case.
 
 
 45
 San Juan further argues that SUWA does not have an interest in this quiet title action sufficient to intervene because SUWA could not itself assert or defend a quiet title action under 28 U.S.C. § 2409a. See Southwest Four Wheel Drive Ass'n, 363 F.3d at 1069, 1071 (holding that member of the public cannot assert a quiet title claim under § 2409a). It is not necessary, however, for a party intervening as a matter of right to be able to assert its own cause of action. See Trbovich v. United Mine Workers of Am., 404 U.S. 528, 530-34, 539, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (allowing union members to intervene in a suit by the Secretary of Labor to set aside a union election even though the Labor Management Reporting and Disclosure Act vested exclusive authority in the Secretary to maintain such a suit); Jones, 348 F.3d at 1018-19. See generally Shapiro, supra, at 726, 736-37, 740 (noting that "there is a difference between the question whether one is a proper plaintiff or defendant in an initial action and the question whether one is entitled to intervene"); Note, Intervention in Government Enforcement Actions, 89 Harv. L.Rev. 1174, 1178, 1186-89 (1976) (discussing private parties' interest in government compliance actions despite not having litigable interest). But see Kootenai Tribe v. Veneman, 313 F.3d 1094, 1104, 1108 (9th Cir.2002) (holding that private parties could not intervene as a matter of right on behalf of federal defendants in suit alleging those defendants violated the National Environmental Policy Act (NEPA) because only the government can violate NEPA and so only the government is a proper defendant in an action to compel its compliance with NEPA).
 
 
 46
 "As the Rule's plain text indicates, intervenors of right need only an `interest' in the litigation — not a `cause of action' or `permission to sue.'" Jones, 348 F.3d at 1018. Moreover, "[t]he strongest case for intervention is not where the aspirant for intervention could file an independent suit, but where the intervenor-aspirant has no claim . . . yet a legally protectable interest that could be impaired by the suit." Solid Waste Agency, 101 F.3d at 507; see Trbovich, 404 U.S. at 529-32, 92 S.Ct. 630.
 
 
 47
 For these reasons, therefore, the fact that SUWA could not itself initiate or defend a federal quiet title action will not necessarily preclude it from intervening as a matter of right in such an action. In fact, there are actions brought under the federal Quiet Title Act, 28 U.S.C. § 2409a, that involve intervenors who apparently are not themselves asserting a property interest in the land at issue, although these cases do not specifically address the propriety of that intervention, or whether the intervention was by right or permissive. See Southwest Four Wheel Drive Ass'n, 363 F.3d at 1069, 1071; see also 101 Ranch v. United States, 905 F.2d 180, 180, 182 (8th Cir.1990); DeBoer v. United States, 653 F.2d 1313, 1314 (9th Cir.1981); Park County v. United States, 626 F.2d 718, 719 (9th Cir.1980).
 
 
 48
 For these reasons, then, we hold that SUWA has a sufficient interest in this quiet title action to intervene under Rule 24(a)(2).
 
 
 49
 2. Does SUWA have an interest that may, as a practical matter, be impaired or impeded by resolution of San Juan County's quiet title action?
 
 
 50
 "Rule 24(a)(2) also requires the intervenors to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest. . . . [T]he question of impairment is not separate from the question of existence of an interest." Utah Ass'n of Counties, 255 F.3d at 1253 (quotation omitted). Further, "the court is not limited to consequences of a strictly legal nature. To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." Id. (citation, quotations omitted).
 
 
 51
 SUWA has made this showing as well. If the district court declares that San Juan has an R.S. 2477 right-of-way in this portion of the Salt Creek road, then San Juan will reopen that road to motorized traffic. Yet the NPS has determined that any level of vehicle traffic will impair the park's resources. See 69 Fed.Reg. at 32,872. Further, although the NPS asserts it will still be able to regulate this traffic to some extent even if San Juan has a right-of-way,[7] the NPS conceded in the district court "that the full range of management options in Salt Creek Canyon, including prohibition on motor vehicle traffic, may not be available to the NPS if [the district c]ourt determines that the County has an R.S. 2477 right-of-way."[8] This would impair SUWA's interest. See Utah Ass'n of Counties, 255 F.3d at 1253-54; Coalition of Az./N.M. Counties for Stable Growth, 100 F.3d at 844.
 
 
 52
 Both the federal defendants and San Juan argue that SUWA will still be able to participate in administrative action concerning the park's management, after this quiet title action is resolved. Nevertheless, "[w]here a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." Utah Ass'n of Counties, 255 F.3d at 1254 (quotation omitted). "Moreover, the possibility of impairment is not eliminated by the intervenors' opportunity to participate in the formulation of a revised land use plan that, at most, would not provide the level of protection to the intervenors' interests that the current plan offers." Id.
 
 
 53
 We therefore conclude that SUWA has an interest that may as a practical matter be impaired or impeded by San Juan's quiet title action.
 
 
 54
 3. Is there another existing party to San Juan's quiet title action that can adequately represent SUWA's interests?
 
 
 55
 Since SUWA has shown "that their motion to intervene was timely, they claim an interest relating to the property which is the subject of the action, and as a practical matter their ability to protect that interest may be impaired or impeded by the disposition of the action . . . [u]nder Rule 24(a)(2), they are . . . entitled to intervene as of right unless that interest is adequately represented by existing parties." Utah Ass'n of Counties, 255 F.3d at 1254 (quotation omitted). The applicant bears the burden of showing that the existing parties will not adequately represent the prospective intervenors' interest, but this burden is "minimal." Id.; see also Trbovich, 404 U.S. at 538 n. 10, 92 S.Ct. 630.
 
 
 56
 In setting forth some of the factors to consider in determining whether an intervenor's interest is adequately represented by an existing party, we have said
 
 
 57
 [a]n applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest. . . . However, representation is adequate when the objective of the applicant for intervention is identical to that of the parties.
 
 
 58
 Coalition of Az./N.M. Counties for Stable Economic Growth, 100 F.3d at 844-45 (quotation omitted). "[T]he possibility of divergence of interest need not be great in order to satisfy the [applicants'] burden." Id. at 845 (quotation omitted); see also Utahns for Better Transp., 295 F.3d at 1117. The prospective intervenors, however, must give specific reasons why an existing party's representation is not adequate. See Kiamichi R.R. Co. v. Nat'l Mediation Bd., 986 F.2d 1341, 1345 (10th Cir.1993).
 
 
 59
 We have previously held that "this showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." Utah Ass'n of Counties, 255 F.3d at 1254. We have
 
 
 60
 repeatedly pointed out that in such a situation the government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation.
 
 
 61
 Utahns for Better Transp., 295 F.3d at 1117 (quotations omitted). But see Maine v. Dir., United States Fish & Wildlife Serv., 262 F.3d 13, 19 (1st Cir.2001) (employing a rebuttable presumption that the government can adequately represent the intervenor's interest).
 
 
 62
 [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor. Even the government cannot always adequately represent conflicting interests at the same time. This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest.
 
 
 63
 Utah Ass'n of Counties, 255 F.3d at 1255-56 (quotation, citation, and alteration omitted).
 
 
 64
 SUWA asserts that the federal defendants have shown that they will not adequately represent its interests in the following regards: First, SUWA had to sue the NPS originally to get the NPS to prohibit all vehicle traffic on this road, showing that the NPS does not share SUWA's objective of preventing all motorized traffic along Salt Creek. That is one factor to be considered when determining whether a party will adequately represent a prospective intervenor's interest. See Coalition of Az./N.M. Counties for Stable Growth, 100 F.3d at 845-46; see also Maine, 262 F.3d at 20 (recognizing this as one factor to consider, but noting that this factor alone is not dispositive). Second, SUWA's interest is narrowly focused on protecting Salt Creek Canyon from the damage and destruction caused by motorized vehicles, while the NPS has a more generalized interest that must take account of a wide range of sometimes competing policy, economic, political, and legal obligations.
 
 
 65
 Third, SUWA asserts that the federal defendants will not adequately represent SUWA's interest because the NPS has never finalized its preliminary administrative finding that San Juan's R.S. 2477 claim to a right-of-way was not valid. In its 2002 environmental assessment, the NPS made a detailed analysis of San Juan's claim to an R.S. 2477 right-of-way, concluding that "an R.S. 2477 right-of-way was not established in Salt Creek Canyon. Existing known evidence does not show by a preponderance of the evidence that the route meets the standard for an R.S. 2477 right-of-way." The assessment further suggested that "[a] formal public notification be carried out and a determination made based upon notice and the opportunity for the public to provide any additional information that may exist regarding the establishment of an R.S. 2477 right-of-way in Salt Creek Canyon." SUWA alleges that since that 2002 assessment, the NPS has not finalized its preliminary determination.
 
 
 66
 Fourth, SUWA contends that the federal defendants will not adequately represent SUWA's interest in the United States having clear title to this property because in 2000 and 2001 the NPS permitted San Juan officials twice to drive in Salt Creek Canyon, despite the NPS's closure of the canyon to vehicle traffic.
 
 
 67
 Fifth, SUWA appears implicitly to assert that the federal defendants have shown they will not adequately represent SUWA's interests because the federal defendants oppose SUWA's intervention, not even recognizing that a conservation interest is implicated in this case. In Utah Association of Counties, one of the factors this court considered in determining that the federal defendants would not adequately represent the intervenors' interest was the fact that "[t]he government has taken no position on the motion to intervene." 255 F.3d at 1256. In light of that fact, this court noted that the federal defendants' "silence on any intent to defend the intervenors' special interests is deafening." Id. (quotation and alteration omitted); see also Utahns for Better Transp., 295 F.3d at 1117. Thus the fact that the NPS has opposed SUWA's motion to intervene in the quiet title action weighs in favor of this court's concluding that the federal defendants will not adequately represent SUWA's interest.
 
 
 68
 Lastly, SUWA asserts that the federal defendants may not adequately represent SUWA's interest in this case because the federal defendants might decide to settle this quiet title action. That possibility, of course, would exist in any case. See Sanguine, Ltd. v. United States Dep't of Interior, 736 F.2d 1416, 1419 (10th Cir.1984) (noting that a party's representation of intervenor-appellants' interests is not inadequate "merely because the representative enters into a consent decree, because any case, even the most vigorously defended, may culminate in a consent decree") (quotation omitted).
 
 
 69
 Although SUWA may be arguing for the same legal result as that being advanced by the federal defendants, the objectives of SUWA and the federal defendants almost certainly diverge. Given the fact that the burden of showing inadequate representation by an existing party is minimal, see Utah Ass'n of Counties, 255 F.3d at 1254, and that it is particularly unlikely that an existing governmental party will share identical interests with a private intervenor, we have no difficulty concluding that SUWA has met its burden in this case on this requirement of Rule 24(a).
 
 
 70
 III. Conclusion.
 
 
 71
 For these reasons, we REVERSE the district court's decision denying SUWA's motion to intervene as a matter of right. In light of this decision, we need not address SUWA's alternative argument that it is entitled to intervene permissively. We REMAND for further proceedings consistent with this opinion. 04-4260, San Juan County, Utah, et al., v. United States, et al.
 
 
 
 Notes:
 
 
 [1]
 This court granted SUWA's motion to expedite this appeal
 
 
 [2]
 We grant SUWA's unopposed motion requesting that this court take judicial notice of the public documents included in SUWA's addendumSee Gonzales v. City of Castle Rock, 366 F.3d 1093, 1096 n. 1 (10th Cir.2004) (en banc) (stating that appellate court can take judicial notice under Fed.R.Evid. 201 of documents not contained in the record), rev'd on other grounds, ___ U.S. ___, 125 S.Ct. 2796, ___ L.Ed.2d ___ (2005); Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir.2000) (noting that a court is permitted to take judicial notice of "facts which are a matter of public record"). These documents include, among other things, the 1995 Backcountry Management Plan for Canyonlands National Park and the 2002 environmental assessment of the Middle Salt Creek Canyon Access Plan.
 
 
 [3]
 Of course, if the original party on whose side a party intervened drops out of the litigation, the intervenor will then have to establish its own standing to continue pursuing the litigationSee Diamond, 476 U.S. at 61-64, 68, 106 S.Ct. 1697 (holding that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III").
 
 
 [4]
 InUnited States Realty & Improvement Co., the Supreme Court noted that Rule 24 authorizes permissive intervention, which "dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." 310 U.S. at 459, 60 S.Ct. 1044.
 
 
 [5]
 This court would consider "a district court's ruling on the timeliness of a motion to intervene under an abuse of discretion standard."Utah Ass'n of Counties, 255 F.3d at 1249. The parties, however, do not dispute that SUWA's motion to intervene in this case was timely.
 
 
 [6]
 Along similar lines, other courts, in addressing requests to intervene in suits challenging administrative action, have noted that Rule 24(a)(2) "was designed with the more traditional private action in mind, and its adaptation to other contexts requires a flexible reading of its provisions."United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir.1984) (quotation omitted), cited in Coalition of Az./N.M. Counties for Stable Growth, 100 F.3d at 843.
 
 
 [7]
 Case law suggests that this would be the caseSee Sierra Club, 848 F.2d at 1088, 1090-91 (holding that while the Bureau of Land Management ("BLM") does not have the right to deny local governments' efforts to make improvements to R.S. 2477 rights-of-way, the BLM "retains a duty to see that [the improvements] do not unduly degrade" federal wilderness study areas); see also Clouser v. Espy, 42 F.3d 1522, 1538 (9th Cir.1994) (holding that, even if trails in national forest qualified as public highways under R.S. 2477, they are still subject to Forest Service regulation), abrogation on other grounds recognized in Fed. Lands Legal Consortium v. United States, 195 F.3d 1190, 1195 (10th Cir.1999); Adams v. United States, 3 F.3d 1254, 1258 n. 1 (9th Cir.1993) (same, in dicta); United States v. Vogler, 859 F.2d 638, 642 (9th Cir.1988) (in suit by private litigant, recognizing that the Secretary of the Interior retained authority to regulate R.S. 2477 right of way within national park); United States v. Garfield County, 122 F.Supp.2d 1201, 1238-41 (D.Utah 2000) (holding that, although the NPS cannot preclude or unreasonably interfere with the reasonable exercise of rights pursuant to a R.S. 2477 right-of-way running through a national park, the NPS does have the authority to regulate the use of a right-of-way); Wilkenson v. Dep't of Interior, 634 F.Supp. 1265, 1266, 1271-72, 1276, 1278-80 (D.Colo.1986) (holding that the Secretary of the Interior cannot completely ban commercial traffic along an R.S. 2477 right-of-way within a national monument, but indicating that the Secretary could regulate that traffic).
 
 
 [8]
 Furthermore, in 1993, the NPS reported to the United States House of Representatives that generally
 [v]alidation of possible RS 2477 rights-of-way assertions would undoubtedly derogate most [national park] unit values and seriously impair the ability of the NPS to manage the units for the purposes for which they were established.... If validated, these [R.S. 2477] assertions will have a severe negative impact on areas managed by the NPS, not only from the rights-of-way themselves but from the associated development.
 
 
 
 72
 PORFILIO, Senior Circuit Judge, dissents.
 
 
 73
 I respectfully dissent from the court's conclusion Southern Utah Wilderness Alliance (SUWA) has a sufficient interest in the land subject to this quiet title action to intervene as a defendant. I believe the district court properly concluded to the contrary, and I would affirm its order denying intervention.
 
 
 74
 In 1866, during the era of land grant statutes aimed at facilitating settlement of the West, Congress passed R.S. 2477 to provide for public access across unreserved public domain lands. From its passage until its repeal in the Federal Land Policy and Management Act in 1976, R.S. 2477 granted: "[t]he right of way for the construction of highways over public lands, not reserved for public uses." 43 U.S.C. § 932 (repealed 1976). On October 21, 1976, the FLPMA repealed R.S. 2477, but preserved "any valid . . . right-of-way . . . existing on the date of approval of this Act." Pub.L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2793 (1976).
 
 
 75
 This action was filed by San Juan County seeking to quiet the title to an R.S. 2477 right-of-way in which the United States claims an interest. The County alleges that after 1866 and before the withdrawal of lands for the creation of Canyonlands National Park on behalf of the public, the County acquired a perfected right-of-way for "Salt Creek Road" within its boundaries. The sole purpose of the action is to quiet the County's claim to that right-of-way.
 
 
 76
 SUWA, and others not a party to this appeal, moved to intervene in the action under Fed.R.Civ.P. 24, seeking either mandatory or permissive intervention as defendants. SUWA's motion was denied, and SUWA appealed.
 
 
 77
 SUWA maintains its standing to intervene is bottomed on "years" it has spent "in a successful effort to protect Salt Creek Canyon . . . from damages due to motorized vehicles." It suggests the right-of-way the County is trying to perfect will make it immune from the Park Service's efforts to protect the Canyon from motor vehicle damage. SUWA states its purpose in intervening is "to oppose the recognition of a right-of-way in Salt Creek Canyon." It claims no title to the land, nor does it seek to have title quieted to it. It merely contends the County's claim to an R.S. 2477 right-of-way should not be recognized because of what SUWA perceives as adverse environmental consequences.
 
 
 78
 Asserting this action is "just the latest chapter in a long history of ongoing litigation, administrative proceedings and public advocacy" between SUWA, the Park Service, and the County over the issue of motor vehicles in Salt Creek Canyon, SUWA suggests this history vests it with special status that will serve to establish its entitlement to intervention. It avers the putative interveners are the only parties with sufficient concern to properly protect the environmental interests of the public.
 
 
 79
 
 Mandatory Intervention.
 
 
 
 80
 Mandatory intervention (or intervention as a matter of right) will be granted under Fed.R.Civ.P. 24(a)(2):
 
 
 81
 When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 82
 We have said an applicant can intervene as of right if the application is: (1) "timely;" the applicant (2) "claims an interest relating to the property or transaction which is the subject of the action;" (3) the applicant's interest may be impaired or impeded; and is not (4) "adequately represented by existing parties." Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir.1996) (emphasis added); Fed.R.Civ.P. 24(a)(2). As we shall see, the words "property" and "transaction" are critical to a proper application of Rule 24. More precisely, as the case law has established, those words connote dissimilar concepts. Because I believe the court is willing to read those words interchangeably, I must part company with it.
 
 
 83
 Rather than first looking to the scope of Rule 24, my analysis begins by focusing on the nature of a quiet title action. The complaint is founded upon 28 U.S.C. § 2409a(a)(QTA), the only purpose of which is "to adjudicate a disputed title to real property in which the United States claims an interest." The goal of such actions generally is to determine which party, plaintiff or defendant, has the superior right, title, or interest in the property itself.
 
 
 84
 When this case is viewed in the context of the QTA, as it must, it becomes clear that a litigable "interest" in such an action is dependant upon a claim to the land itself. In Kinscherff v. United States, 586 F.2d 159, 160 (10th Cir.1978), owners of land adjacent to a road built on government land sought to have title to the road quieted in the name of the public. We affirmed dismissal of the suit, defining the kind of interest necessary to sustain a quiet title action. The Kinscherff plaintiffs contended their litigable interest arose from New Mexico law which entitled them to use the road as members of the public. They also claimed as owner of land abutting a public highway they had an interest in real property as required by 28 U.S.C. § 2409a. We concluded the New Mexico statute the plaintiffs relied upon "refut [ed]" their claim. Id. at 159. We stated:
 
 
 85
 Members of the public as such do not have a "title" in public roads. To hold otherwise would signify some degree of ownership as an easement. It is apparent that a member of the public cannot assert such an ownership in a public road. . . . . Thus the "interest" plaintiffs seek to assert as part of the public is not of such a nature to enable them to bring a suit to quiet title.
 
 
 86
 Although Kinscherff did not deal with intervention, it nonetheless establishes the boundaries of the interest in land required to pursue a quiet title action. See also, Southwest Four Wheel Drive Assn. v. Bureau of Land Mgmt., 363 F.3d 1069, 1071 (10th Cir.2004) (private party cannot assert an "interest" in a public road for quiet title purposes); Kansas v. United States, 249 F.3d 1213, 1224 (10th Cir.2001) (an interest in property within the meaning of the QTA must be an interest in title to the property). SUWA admittedly has no interest in the title to the land that is the subject of this suit, nor can it assert the public's environmental interest in the use of the road as a shoehorn to wedge its way into a defense of the action. In the context of this quiet title action, SUWA simply has no litigable interest here.
 
 
 87
 Most telling in this case is that its outcome will be a judgment quieting the title to the Salt Creek Road right of way in either the County or the United States. SUWA has no legal interest in that outcome. As a party without a claim of legal title in the land, SUWA's "interest" in having that title vest in one of the other parties, or its concern about how the property will be managed in the future does not qualify as significant interests for intervention in the action.
 
 
 88
 For these reasons, I disagree with the court's conclusion SUWA can claim an interest in the property. Although SUWA has convinced the court its history of litigating with the Government and the County should entitle SUWA to a more lenient interpretation of the concept of "interest," I believe the argument is misdirected. Moreover, it is supported only by distinguishable authority.
 
 
 89
 First, and foremost, none of the cases relied upon by SUWA deal with quiet title actions. I naturally deem that quite significant.
 
 
 90
 Indeed, the cases in which courts have been less strict in determining an interveners's interest pertain to governmental decisions made in the process of administration. In such cases, the putative interveners have usually participated at some stage of the administrative process, making the word "transaction" in Rule 24(a)(2) the operative word. The interveners in those cases generally have been able to establish a history of activity connecting them to the transaction which was at the core of the litigation or its result. Thus, having been a party to that transaction, they had a stake in the outcome of the litigation pertaining to that transaction.
 
 
 91
 For example, in Utah Ass'n of Counties v. Clinton, 255 F.3d 1246 (10th Cir.2001), an action filed to have the court declare invalid a presidential proclamation establishing the Grand Staircase Escalante Monument, the court recognized the long-term environmental interests and history of interveners who sought to preserve that dedication on behalf of the public. The issue to be litigated, however, was the survival of the Monument as a monument, and not title to its underlying land. Id. at 1251. That is, the subject of the action was the transaction which resulted in the dedication of the monument; therefore, to establish a right to intervene, the applicants only had to show an interest in that transaction. They did so by proving their long-term involvement in the subject of the monument. Id. at 1252. The interveners properly were not held to the burden of proving an interest in the land because the subject of the suit was not the land itself.
 
 
 92
 In Coalition of Ariz./N.M. Counties for Stable Econ. Growth, 100 F.3d at 837, an action challenging the designation of the Mexican Spotted Owl as an endangered species under the Endangered Species Act, we recognized as sufficient to permit intervention the interest of a professional photographer and biologist who photographed the Owl and had participated in the original decision to protect the Owl. Once again, the distinguishing factor is that the subject of the litigation was not property, but a transaction in which the intervener had an involvement: protecting the Mexican Spotted Owls.
 
 
 93
 The lenient definition of the intervener's interest in those and similar cases was admittedly justified by the same kind of interest SUWA asserts here. Indeed, if the County filed this action in an attempt to overthrow a decision of the Park Service to ban vehicle traffic in Salt Creek Canyon, SUWA could successfully assert its history, participation, and environmental interest in the Canyon to properly claim an interest in the transaction-the ban itself-to permit mandatory intervention.
 
 
 94
 However, even though SUWA asserts it seeks to preserve the Government's superior interests in the land, the focus SUWA generates is not on the legal title but on whether the County's use of the land will be inimical to SUWA's environmental interests if the County prevails in the action. Yet, because the subject of this litigation is not an administrative transaction, SUWA cannot claim the type of interest essential to justify intervention. Remembering the purpose of the complaint here is confined to a determination of whether the County has a right-of-way which is superior to the government's claim, I think how that land is to be used after the suit is concluded is a question foreign to the action.
 
 
 95
 Allard v. Frizzell, 536 F.2d 1332 (10th Cir.1976), provides an interesting parallel to this case. Allard was an action filed to challenge both the constitutionality of the Migratory Bird and Eagle Protection Act as well as its application to deny plaintiffs the use of feathers from dead birds. The National Audubon Society and the Environmental Defense Fund sought intervention to uphold the Act. Intervention was denied, and the Interveners appealed. This court held the Interveners were not entitled to either mandatory or permissive intervention, pointing out the action was "based on, or directed to, . . . feathered artifacts" in Plaintiffs' possession. Id. at 1332. In contrast, the court reminded, the Interveners' only interest was "in protection of the living birds, and the environment, but these matters are not in issue." Id. The limited interest the County pursues in this action is a declaration of whether it has legal title to a specific right-of-way. That interest is akin to the limited interest pursued by the Allard plaintiffs. At the same time, SUWA wants to protect the public use of the land potentially subject to that right-of-way. That interest is the equivalent of wanting to protect bird life or the environment. As we noted in Allard,
 
 
 96
 The specific nature of the cause of action, and the basis for plaintiffs' claims, when examined closely, demonstrates the wide departure therefrom sought to be made by the movants. The movants have no requisite specific interest, and none other than that asserted by the public generally.
 
 
 97
 Id. at 1333-34.
 
 
 98
 Finally, not only is there an absence of an interest in the property subject to the litigation, but also SUWA has no legally protected interest in the litigation itself. In Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Supreme Court denied a taxpayer's right to intervene in an action between his employer and the IRS. In the action, the IRS sought routine business records which related to the taxpayer's employment. In affirming the denial of intervention, the Court held Fed.R.Civ.P. 24(a) requires "a significantly protectable interest" in the property or the transaction subject to the litigation. Id. at 531, 91 S.Ct. 534. Although the taxpayer had an interest in his employment records which affected his tax liability, he had no protectable interest in the employer's business records. Here, too, although SUWA has an interest in how the Canyon is used, like the routine business records, the protectable interest in a quiet title action is a claim of title to the land. That, of course, is an interest SUWA cannot claim.
 
 
 99
 That is not to say the cause asserted by SUWA is not substantial. Indeed, whether motor vehicles may ultimately be allowed in the Salt Creek Canyon is an issue in which many have an interest. Yet, although there may be more appropriate ways to pursue the question, mandatory intervention into this action is not one of them.
 
 
 100
 
 Permissive intervention.
 
 
 
 101
 Fed.R.Civ.P. 24(b)(2) establishes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." We review denial of permissive intervention for abuse of discretion, that is "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir.1991). SUWA asserts it has defenses to propose which are common to those asserted by the Government. Yet, the Government argues those defenses are based on interests solely those of the Government itself, for example, failure to state a claim or lack of jurisdiction. It remains SUWA's interest in proper land management is foreign to the quiet title action because it does not pertain to an assertion of a superior right or title in the land in issue. There is no way in which SUWA's interests present questions of law or fact which entitle it to permissive intervention. For those reasons, the district court did not abuse its discretion. See Allard, 536 F.2d at 1334 (permissive intervention to assert an interest in protecting living eagles presented no common question of fact or law in a case involving dealing with feathers of long dead eagles).
 
 
 102
 I would affirm the judgment of the district court.